## COMMONWEALTH *vs.* COURTNEY TURNER
## (and a companion case[1]).

No. 07-P-758.

Plymouth. March 25, 2008. - May 6, 2008.

Present: KAFKER, DREBEN, & WOLOHOJIAN, JJ.

*Search and Seizure,* Affidavit, Warrant, Probable cause. *Controlled Substances. Practice, Criminal,* Warrant. *Probable Cause. Constitutional Law,* Probable cause.

The dismissal of charges against criminal defendants for lack of prosecution was improper, where the dismissals were ordered during the period the Commonwealth was entitled to seek leave to appeal from the allowance of a motion to suppress evidence. [666]

A District Court judge erred in allowing criminal defendants' motions to suppress evidence of drugs and other items found in a search of the residence of one of the defendants pursuant to a search warrant, where the affidavit supporting the warrant provided a sufficient basis to conclude that the monies from illegal drug sales were probably in the residence or on the persons of the defendants; moreover, even if the warrant were considered invalid as to the search for drugs, suppression of drugs seized would not be warranted if they were in plain view when the search for the monies occurred. [669-670]

COMPLAINTS received and sworn to in the Wareham Division of the District Court Department on May 26, 2006.

Pretrial motions to suppress evidence were heard by *Brian R. Merrick,* J., and entry of judgments of dismissal was ordered by *Rosemary B. Minehan,* J.

An application for leave to prosecute an interlocutory appeal was allowed in the Supreme Judicial Court for the county of

---

[1]Commonwealth *vs.* Chad Turner. Michael P. Atwood, another defendant below, neither appeared nor filed a brief. His former attorney was allowed to withdraw because he was unable to contact Atwood. This opinion does not address any questions or issues that specifically relate to him. See *Commonwealth* v. *Hill,* 51 Mass. App. Ct. 598, 599 n.1 (2001), in which we followed this procedure, citing to Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and Mass.R.A.P. 19(c), 365 Mass. 868 (1974).

Suffolk by *John M. Greaney*, J., and the appeal was reported by him to the Appeals Court.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

*Brad P. Bennion* for Courtney Turner.

*Geoffrey DuBosque*, for Chad Turner, was present but did not argue.

DREBEN, J. This case presents once again the question of what evidence is needed in an affidavit in support of a search warrant to establish the nexus between a drug dealer's residence and his drug supply. After a District Court judge allowed the defendants' motions to suppress drugs and other items found in the residence of Courtney Turner, the Commonwealth applied to a single justice of the Supreme Judicial Court for leave to take an interlocutory appeal. See Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). Leave was granted to take an appeal to this court. The Commonwealth also appeals from the judge's dismissal of the charges against the defendants. We reverse both the orders allowing the motions to suppress and the judgments dismissing the charges against the defendants.

1. *Dismissal of the charges.* The defendants correctly concede that the dismissals of the charges for lack of prosecution were improper as they were ordered during the period the Commonwealth was entitled to seek leave to appeal. See Mass. R.Crim.P. 15(b)(1), as appearing in 422 Mass. 1501 (1996). Accordingly the judgments of dismissal are reversed.

2. *The affidavit.* Our inquiry as to the sufficiency of the search warrant application "begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). Does the affidavit "contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched[?]" *Id.* at 300, quoting from *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980). See generally Smith, Criminal Practice and Procedure § 4.43 (3d ed. 2007); Grasso & McEvoy, Suppression Matters under Massachusetts Law § 8.2(d)(3) (2008-2009).

The application sought a warrant to search the premises located at 298 Onset Avenue in Onset for:

> "Any and all illegal drugs as defined in Chapter 94C of the MA General Laws in particular cocaine in any of its forms. Any records and profits from the sale of illegal drugs. Any monies derived from the sale of illegal drugs. Any papers showing occupancy of the residence. Any identification of person(s) present at the premise to be searched."

Detective Peter Flannery of the Wareham police department was the affiant. After describing his training and experience in narcotics investigations, he stated that he was contacted by a confidential informant (CI1) and was told that Courtney Turner was selling both powder and "crack" cocaine in the Wareham area. CI1 had purchased cocaine from Turner in the past and had been present when Turner sold cocaine to others.[2] CI1 said Turner lived at 298 Onset Avenue in Onset and operated a black Cadillac STS. CI1 knew this because "he/she had purchased cocaine from Turner at his residence on Onset Avenue by Old Onset Road and had purchased cocaine from Turner inside the black Cadillac STS on numerous occasions in the past."

Police records verified that Turner had listed 298 Onset Avenue as his address and that he had been stopped by Wareham police on May 7, 2006 while operating a 1993 black Cadillac, Massachusetts registration 64WA45, registered to Corinne Turner, 298 Onset Avenue. Police had also seen the vehicle parked in front of that address.

The police arranged for CI1 to make controlled drug purchases during the weeks of April 16, 2006, and May 7, 2006, and within seventy-two hours of the date of the application (May 25, 2006, which was also the date of the execution of the warrant). On the occasion of each purchase, CI1 was searched for weapons, contraband, and money, and was given a quantity of United States currency, for which the serial numbers had been re-

---

[2]CI1 also told Detective Flannery that Turner placed the cocaine he sold to other people in his mouth when he traveled in motor vehicles. CI1 knew this because when "he/she" purchased cocaine from Turner, he spit the cocaine out of his mouth.

corded. For the first purchase, CI1 was instructed to contact Turner by telephone; CI1 did so and was told to meet Turner at a predetermined location. Police followed CI1 to that location, and a short time thereafter, the officers saw a vehicle operated by Turner arrive bearing Massachusetts registration number 64WA45. They saw CI1 meet with Turner and walk away from the vehicle. Police followed Turner from the transaction to 298 Onset Avenue, where he was seen leaving the Cadillac and entering the house. CI1 was also followed, and he or she handed police a baggie containing an off-white, rock-like substance that subsequently tested positive for cocaine.

For the second purchase, CI1 had to make several attempts to reach Turner. When finally CI1 made telephonic contact, he or she spoke to Curtis Pires, a person police knew as an associate of Turner.[3] One police officer followed CI1 to the predetermined location, and Detective Flannery, who was surveilling 298 Onset Avenue, saw Curtis Pires and Courtney Turner leave 298 Onset Avenue, saw Pires enter a vehicle, and then followed Pires to the predetermined location. After the transaction, Flannery followed Pires directly back to 298 Onset Avenue. CI1 was followed to the predetermined location by another officer and was seen meeting with Pires. Thereafter, Pires gave the officer a knotted-corner plastic baggie containing a white powdery substance that later tested positive for cocaine. The last purchase, again involving Turner, occurred seventy-two hours prior to the issuance of the warrant. CI1 telephoned Turner, and the police followed CI1 to the predetermined destination. After the transaction, Turner was followed back to 298 Onset Avenue. CI1 gave what he had purchased to an officer, and was searched. The substance purchased tested positive for cocaine.

The affidavit also stated that both Courtney Turner and Curtis Pires were previously charged with criminal offenses, including drug offenses, and that Flannery's experience taught him that narcotic dealers do not carry large quantities of drugs on their person and keep their drug stash as well as the proceeds from the transactions at their residence.

---

[3]Pires and Turner had been arrested on October 17, 2005 as a result of a motor vehicle search after police detected an odor of burnt marijuana. Five packages of suspected crack cocaine were found in their vehicle.

3. *Validity of search warrant.* The defendants urge that *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907, 908 (2003), governs this case. In *Smith*, we held that the single observation by the police of the defendant driving to his home from a drug transaction and a single observation of the defendant driving from his home to a drug transaction "did not establish a substantial basis for concluding that the defendant was keeping drugs or related items at the address to be searched." *Id.* at 909. We need not, however, determine whether there was probable cause to search Turner's residence for drugs, but see *Commonwealth* v. *Pina*, *ante* 653 (2008), because in any event the affidavit furnished probable cause to believe the apartment would contain the monies derived from at least the last illegal sale of drugs.

The application for the warrant explicitly sought, in addition to drugs, "monies derived from the sale of illegal drugs."[4] Although in some cases a defendant's return to a residence after a sale may not support the inference that drugs may be stashed there, see *Commonwealth* v. *Stegemann*, 68 Mass. App. Ct. 292, 302 (2007), the affidavit set forth that on all three occasions CI1 was given money with "serial numbers recorded," and on all three occasions Turner or Pires directly returned to the residence after selling drugs, the last time within seventy-two hours of the affidavit. These trips provide a timely link between the criminal activity, the defendants, and the residence. See *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. 102, 108 (2007). See also *Commonwealth* v. *Fenderson*, 410 Mass. 82, 87-88 (1991). The magistrate had a substantial basis for concluding that the monies from the illegal sales were probably in the residence or on the persons of the defendants.[5] See *Commonwealth* v. *Upton*,

---

[4]We need not dwell on the qualifications of CI1, as "[a] controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant." *Commonwealth* v. *O'Day*, 440 Mass. at 302, quoting from *Commonwealth* v. *Warren*, 418 Mass. 86, 89 (1994). See *Commonwealth* v. *Blake*, 413 Mass. 823, 827-828 (1992); *Commonwealth* v. *Santiago*, 66 Mass. App. Ct. 515, 517 n.6 (2006).

[5]The parties have not raised any question concerning the portion of the warrant that authorized the search of "any person present." See *Commonwealth* v. *Brown*, 68 Mass. App. Ct. 261, 262 (2007). When asked at oral argument, neither counsel for the defendants nor for the Commonwealth knew whether any persons present had been searched. Accordingly, we have no occasion to

394 Mass. 363, 370 (1985); *Commonwealth* v. *Santiago*, 66 Mass. App. Ct. 515, 521 (2006); *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. at 108. An affidavit is sufficient if it "provided the magistrate with a substantial basis for concluding that *any* of such articles was probably present in the [residence]" (emphasis supplied). *Commonwealth* v. *Stewart*, 358 Mass. 747, 749 (1971). *Commonwealth* v. *Upton*, 394 Mass. at 370.

Even if the warrant were considered invalid as to the search for drugs, a question we do not address, it does not follow that the drugs and other items seized need be suppressed. This is so because if these items were seized in plain view "within the scope and intensity of the search permitted under the terms of the valid portions of the warrant," namely, the search for money, they need not be suppressed. *Commonwealth* v. *Lett*, 393 Mass. 141, 147 (1984). See *Commonwealth* v. *D'Amour*, 428 Mass. 725, 730 (1999).

Our reversal of the dismissals will require further proceedings in this matter. In the unlikely event that the defendants believe that the drugs and other items seized did not come within the officers' plain view while they were conducting a legal search in places where the monies might reasonably be found, they may on remand seek a hearing on that issue.

*Conclusion.* The judgments dismissing the charges are reversed, and the orders allowing the motions to suppress are reversed. The matter is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

discuss any issues relating to that provision of the warrant.