## Commonwealth *vs.* Joseph J. Rodriguez
### (and seventeen companion cases[1]).

No. 08-P-402.

Worcester. January 6, 2009. - September 29, 2009.

Present: Lenk, Sikora, & Wolohojian, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Warrant, Affidavit, Probable cause. *Controlled Substances.*

A Superior Court judge erred in allowing three criminal defendants' pretrial motions to suppress cocaine, cash, firearms, ammunition, and other items seized at one defendant's apartment by police officers during the execution of a search warrant, where the affidavit in support of the search warrant, based on information from a confidential informant, sufficiently demonstrated the basis of the informant's knowledge and the reliability of the information provided [295-297]; where the affidavit provided a sufficient nexus between that defendant's drug selling activity and his residence to establish probable cause, in that the confidential informant stated, after each of two controlled drug purchases, that the defendant possessed additional quantities of cocaine packaged for sale on his person [297-299]; and where the affidavit provided probable cause to search the apartment for other items listed on the warrant application, including telephone records and business records [300].

Indictments found and returned in the Superior Court Department on August 16, 2006.

Pretrial motions to suppress evidence were heard by *John S. McCann,* J., and motions for reconsideration were heard by him.

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

*John M. Goggins* for Joseph J. Rodriguez & others.

[1]Five of the companion cases are against Joseph J. Rodriguez, six are against Angelo T. Rodriguez, and six are against Llavar F. Hind.

SIKORA, J. Police have a suspected drug dealer under surveillance. They create two controlled purchases from him. In the first, they monitor his travel directly *from* the site of the purchase to his apartment. In the second, they follow his travel from the apartment directly *to* the site of the purchase. In neither instance did he stop at any intermediate location. In both instances, the undercover buyer reported that the suspect was carrying additional packaged drugs on his person. Our issue is whether these events and observations furnish sufficient information within the "four corners" of a police affidavit for issuance of a warrant to search the apartment of the suspect.

*Procedural history.* On August 16, 2006, a grand jury returned indictments charging each of the defendants with three counts of unlawful possession of firearms and ammunition (in violation of G. L. c. 269, § 10[h][1]), one count of improper storage of a firearm (in violation of G. L. c. 140, § 131L[a]), one count of trafficking in cocaine (in violation of G. L. c. 94C, § 32E[b][2]), and one count of trafficking in cocaine within a school zone (in violation of G. L. c. 94C, §§ 32A[a], 32J). The defendants filed separate motions to suppress evidence seized pursuant to a search warrant. A Superior Court judge denied the motions to suppress. The defendants moved for reconsideration. The judge allowed the motions for reconsideration, vacated the denial, and allowed suppression of the evidence. He based the suppression order upon the failure of the affidavit in support of the search warrant application to establish a nexus between the items sought and the apartment searched.

*Factual background.* On June 19, 2006, a clerk-magistrate of the Worcester Division of the District Court Department issued two search warrants, one for the defendant Llavar F. Hind's vehicle and one for his apartment. The warrants authorized searches for cocaine, materials related to cocaine distribution, and any documents pertaining to occupancy of the apartment or the vehicle. Officers executed the warrants on the following day. Inside the apartment, they found and seized cocaine, $1,812 in currency, firearms, ammunition, three cellular telephones, materials related to cocaine distribution, and papers apparently belonging to each of the three defendants. The officers did not seize anything from Hind's vehicle, and the defendants' motions did not address the search of the vehicle.

Our examination of a search warrant application for probable cause "always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). Worcester police Officer Michael Ryder signed the affidavit in support of the application. It contains the following information. Officer Ryder had been a police officer for nineteen years at the time of the application. For the preceding three years, he had worked in the vice unit in a plain-clothed investigative capacity. He had participated in numerous narcotics investigations and arrests and had experience in surveillance, undercover purchases of narcotics, and the execution of search warrants. He had also completed an eighty-hour course in drug enforcement.

In the two weeks prior to the application for the warrant, Ryder had conversed with a confidential informant (CI) about the sale of unlawful narcotics in Worcester. He had met CI approximately two weeks prior to the application. He knew the true identity and home address of CI, but he did not identify CI in the affidavit. Approximately one month before the warrant application, CI had provided information to Worcester police which resulted in issuance of a search warrant. Through execution of that warrant, police seized cocaine and materials related to cocaine distribution and arrested the target of the warrant. A charge of possession of a class B substance with intent to distribute was pending against the target of that warrant at the time of Officer Ryder's affidavit.

CI told Ryder that he[2] had purchased cocaine on numerous occasions from a man whom he knew as "Big." CI described Big as an approximately twenty-three year old African American male, six feet, two inches tall, with a large build and short, black hair. CI stated that he had used a certain telephone number to reach Big, and gave the number to Officer Ryder. On numerous occasions, CI and Big, through telephone conversations, had arranged to meet at a location where CI had previously purchased cocaine from Big. CI stated also that Big drove a red Ford Explorer vehicle. CI provided the vehicle's registration number to Ryder. Through a search of records of the registry of motor

---

[2]In his affidavit, Officer Ryder deliberately withholds CI's gender. For ease of reference, we refer to CI as "he."

vehicles, Officer Ryder learned that Hind was the registered owner of the vehicle. The registry listed Hind's address as 23 Shelby Street, apartment 2, in Worcester. Further searches of the registry's records and Worcester police department files revealed that Hind had an active Massachusetts driver's license bearing the same address, and that he was a twenty-three year old African American male, six feet, three inches tall and weighing 250 pounds.[3]

On or about June 9, 2006 (eleven days prior to execution of the warrant), Officer Ryder and CI conducted a controlled purchase of cocaine from Big. Prior to the purchase, Ryder showed CI a picture of Hind, and CI identified Hind as Big. In Ryder's presence, CI called the telephone number which he had previously provided to Ryder. CI spoke to Big and arranged to meet him at a specified location. At that location, Ryder and other members of the vice unit observed a red Ford Explorer approach CI. The Explorer's license plate matched the previously provided registration number. The Explorer drove away after a brief meeting with CI. Members of the vice unit followed the Explorer to 23 Shelby Street. They observed a large, African American male, approximately six feet, three inches tall, get out of the vehicle and enter 23 Shelby Street.

After the purchase, Officer Ryder observed CI until they were able to reconvene at a prearranged location. CI gave a quantity of cocaine to the officer and stated that he had purchased the cocaine from Hind. Ryder intentionally withheld the quantity of cocaine purchased to protect CI's identity. CI stated that Hind had on his person an additional amount of cocaine packaged for sale.

Less than two days prior to the warrant application (and three days prior to execution of the warrant), Ryder and CI met again and conducted another controlled purchase of cocaine from Hind. CI followed the same procedure to arrange the purchase. In Officer Ryder's presence, he called Big. As CI called Big, a member of the vice unit, Officer Jon Kachadoorian, observed 23 Shelby Street. Shortly after CI's call, Kachadoorian saw a

---

[3]Worcester police department records indicated also that, approximately eight months before the warrant application, the police had received a call for a reported heroin overdose at Hind's address. Authorities found an unconscious person in the apartment's bathroom and transported her to a local hospital for treatment.

man whose appearance matched that of Hind through the window of apartment 2 at 23 Shelby Street. He watched as this man left the building, entered the red Ford Explorer bearing the previously provided registration number, and drove away. Members of the vice unit followed the Explorer to the prearranged location, where the vehicle briefly met CI. After the meeting, officers followed the Explorer for a short time until they lost it in traffic.

Officer Ryder observed CI's uninterrupted drive to the location of the purchase, his meeting with the Ford Explorer, and his drive from the site of the purchase to a predetermined meeting point. As before, CI gave a quantity of cocaine to Officer Ryder and stated that he had purchased the cocaine from Hind. Also as before, CI stated that Hind had on his person an additional amount of cocaine packaged for sale. Once again in his affidavit, Officer Ryder intentionally withheld the quantity of cocaine purchased.

*Discussion.* Neither the Fourth Amendment to the United States Constitution nor art. 14 of the Declaration of Rights of the Massachusetts Constitution defines "probable cause." *Commonwealth* v. *O'Day*, 440 Mass. 296, 300 (2003). "To establish probable cause to obtain a search warrant, the affidavit must 'contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched.' " *Ibid.*, quoting from *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980). "In drug cases such as the present one, . . . '[t]he affidavit need not convince the magistrate beyond a reasonable doubt, but must provide a substantial basis for concluding that [drugs or instrumentalities of the drug trade] will be found on the specified premises.' " *Commonwealth* v. *Pina*, 453 Mass. 438, 440 (2009), quoting from *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000). "The affidavit should be read in an ordinary, common-sense manner, without hypertechnical analysis." *Commonwealth* v. *Cruz*, 430 Mass. 838, 840 (2000), citing *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965). Where the affiant relies on information from a confidential informant to provide probable cause, "art. 14 requires that the affidavit apprise the magistrate of some facts and circumstances showing both (1) the basis of the informant's knowledge, and (2) the credibility of the informant or the reli-

ability of his information." *Commonwealth* v. *O'Day*, *supra* at 301, quoting from *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992). See *Aguilar* v. *Texas*, 378 U.S. 108, 110-115 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 412-419 (1969).

1. *Reliability of informant.* First, the defendants argue that Officer Ryder's affidavit did not supply probable cause to search Hind's apartment because it did not demonstrate sufficiently CI's basis of knowledge or his credibility. Some of the information in the affidavit came from police observations. These facts include: (i) CI's use of a specified telephone number to contact Big; (ii) Hind's status as the registered owner of the Explorer; (iii) Hind's height, weight, birth date, and address as revealed through record checks; (iv) the brief meetings between CI and the Explorer; (iv) CI's acquisition of cocaine from an occupant of the Explorer; (v) the Explorer's travels to and from the controlled purchases; and (vi) Hind's presence in his apartment and subsequent entry into the Explorer shortly after CI's call for the second purchase. The use of these factual elements in the probable cause determination does not depend on CI's basis of knowledge and credibility. However, other facts crucial to the probable cause determination depend on CI's status as a reliable informant. These are: (i) a history of numerous cocaine purchases by CI from Hind through the method described by CI; (ii) CI's identification of Hind as Big; (iii) CI's statements that Hind sold him the cocaine during each controlled purchase; and (iv) CI's statement that Hind possessed additional quantities of cocaine packaged for sale during each controlled purchase.

We conclude that Officer Ryder's affidavit demonstrated sufficiently CI's basis of knowledge. CI's descriptions of Big's physical appearance, vehicle, and method of operation were detailed enough to be "consistent with personal observation, not mere recitation of a casual rumor." *Commonwealth* v. *O'Day*, 440 Mass. at 301, quoting from *Commonwealth* v. *Alfonso A.*, 438 Mass. 372, 374 (2003). The magistrate could conclude that CI acquired his knowledge of Big and his operation through previous interactions with Big and not "through the grapevine." The affidavit indicates that CI based the following on personal observations: (i) his identification of Hind, (ii) his statements that Hind had sold him cocaine during the controlled purchases, and (iii) his statements that Hind had possessed additional cocaine

packaged for sale during the controlled purchases. CI's statements and his identification of Hind have the support of a sufficient basis of knowledge because he based them on his own observations. See *Commonwealth* v. *Montanez,* 410 Mass. 290, 300 (1991) (basis of knowledge requirement satisfied because "informants' knowledge was based on personal observations"); *Commonwealth* v. *Rodriguez,* 49 Mass. App. Ct. 664, 668 (2000) ("It is well established that an informant's basis of knowledge may be satisfied simply by his or her personal observation").

We consider separately, however, whether the information supplied by CI was credible. Officer Ryder's knowledge of CI's identity and address weighs in favor of CI's credibility. See *Commonwealth* v. *Alfonso A., supra* at 375-376 (confidential informants known to police are more reliable than truly anonymous sources). In addition, approximately one month prior to the search warrant application, CI had provided information to Worcester police which resulted in an arrest and the seizure of cocaine. At the time of the application, the charge which resulted from the arrest was still pending. Officer Ryder did not provide the name of that defendant or the docket number of the pending case. His affidavit stated only that police had confiscated five grams of cocaine, a digital scale, and packaging material. Ryder did not indicate whether he purposefully withheld that defendant's name or the case's docket number.[4] Despite omission of some of the details, CI's provision of the information resulting in the arrest and seizure just one month prior to Officer Ryder's affidavit, together with Officer Ryder's knowledge of CI's identity and address, indicates that CI was a reliable and credible source of information. See *Commonwealth* v. *Perez-Baez,* 410 Mass. 43, 45-46 & n.2 (1991) (veracity of confidential informant demonstrated by affiant's statement that informant had provided information leading to arrests of named defendants and seizures of cocaine); *Commonwealth* v. *Mejia,* 411 Mass. 108, 113 (1991)

[4]Ryder may have done so to protect CI's identity. However, the omission of such information permits the magistrate to make a subtraction from the supporting information of the affidavit. If the circumstances do not threaten exposure of the confidential informant, the better practice is to include identification of the prior prosecution. If they do, the affidavit should explain the risk. In this instance, the subsequent observation of the controlled purchases superseded any deficit caused by the omission.

(discussing holding of *Commonwealth* v. *Perez-Baez, supra*, and noting that affiant's "allegation regarding seizure of narcotics" allowed the magistrate to infer that the informant had previously told officers that narcotics were at a particular location and that officers had confirmed the informant's tip). Therefore the magistrate could use the information supplied by CI to determine whether Officer Ryder's affidavit provided probable cause to search Hind's apartment.

2. *Nexus.* The defendants argue that Officer Ryder's affidavit did not sufficiently establish the necessary connection between cocaine distribution and Hind's apartment. Where police seek to search a residence for evidence of drug distribution, "there must be specific information in the affidavit, and reasonable inferences a magistrate may draw, to provide 'a sufficient nexus between the defendant's drug-selling activity and his residence to establish probable cause to search the residence.' " *Commonwealth* v. *Pina*, 453 Mass. at 440-441, quoting from *Commonwealth* v. *O'Day*, 440 Mass. at 304. "The connection between the items to be seized and the place to be searched does not have to be based on direct observations; it may be found by looking at the type of crime, nature of the items, the suspect's opportunity to conceal items, and inferences as to where the items are likely to be hidden." *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 600 (1991), citing *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 484 U.S. 860 (1983).

In addition to cocaine, the officers sought "[a]ll materials, products, and equipment of any kind . . . used or intended for use, in . . . delivering . . . [or] distribution . . . [of] cocaine. All books, records, and documents . . . used or intended for use in violation of [the drug laws]. . . [and] [a]ll money used or intended for use, in the procurement and/or illegal distribution of cocaine, and any documents pertaining to the occupancy of [Hind's apartment]." We conclude that Officer Ryder's affidavit provided probable cause to believe that the items sought were within Hind's apartment. The two controlled purchases, the officers' collective observations of Hind, and CI's statements established the "substantial basis" necessary for a determination of probable cause. See *Commonwealth* v. *Pina*, 453 Mass. at 440 (affidavit "must provide a substantial basis for" conclusion that officers will find items sought in specified premises).

The facts of this case bear a resemblance to those of both *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907 (2003), and *Commonwealth* v. *Pina, supra*. In *Commonwealth* v. *Smith*, 57 Mass. App. Ct. at 908-909, we reversed the denial of a motion to suppress in circumstances in which police had observed the defendant drive from his home to a drug sale on one occasion and, on another occasion, return to his home from a drug sale. We concluded that "the observations by the police of the defendant driving, either to or from his home, without more, established no connection between his home and the controlled buys." *Id.* at 908.[5] In *Commonwealth* v. *Pina*, 453 Mass. at 442-443, the Supreme Judicial Court affirmed the allowance of a motion to suppress in an instance in which police had applied for a search warrant three days after observing the defendant drive from his apartment to a controlled purchase. The court cited the analysis of *Commonwealth* v. *Smith, supra,* and agreed with it. *Commonwealth* v. *Pina, supra* at 441. It noted that "[t]he only particularized information contained in the affidavit connecting the defendant's observed drug activity with the apartment in which he lived was a single observation of the defendant driving from the apartment to a location where he sold an unspecified quantity of cocaine to the informant." *Id.* at 441-442.

The crucial factual elements distinguishing this case from *Commonwealth* v. *Pina, supra,* and *Commonwealth* v. *Smith, supra,* are CI's two statements, made after each controlled purchase, that Hind had additional quantities of cocaine packaged for sale on his person. CI's observation that Hind possessed more cocaine packaged for sale provided the additional evidence necessary to give the officers probable cause to believe that they would find cocaine in either Hind's Explorer or in his apartment. See *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. 210, 213 (2005) ("Although the fact that an individual on one occasion drives directly from his residence to a drug transaction does not, by

---

[5]The judge in this case first denied the defendants' motions to suppress. He conscientiously reconsidered that ruling in light of the *Smith* decision and allowed the motion. The *Smith* case presents a generically similar surveillance of a suspect engaged in controlled purchases. On closer inspection of the present record (a task far easier by appellate review than by original ruling), an important distinction becomes visible: the present suspect's possession of inventory at the scenes of the controlled purchases.

itself, establish probable cause to search his residence . . . it may, *with additional evidence* . . . link a defendant's drug-selling activity to his residence") (emphasis supplied); *Commonwealth* v. *Luthy,* 69 Mass. App. Ct. 102, 108 (2007) (affidavit established sufficient nexus between cocaine distribution and defendant's residence in circumstances in which defendant operated cocaine delivery service through use of cellular telephone, officers observed defendant leave residence prior to controlled purchase and return to it after, and affidavit contained informant's description of defendant's method of operation). Contrast *Commonwealth* v. *Chongarlides,* 52 Mass. App. Ct. 366, 370 (2001) (where affidavit indicated defendant had used heroin three days earlier at another location, no probable cause to search for drugs at location that was allegedly defendant's residence); *Commonwealth* v. *Olivares,* 30 Mass. App. Ct. at 600-601 (no probable cause to search defendant's residence; affidavit described drug transaction at defendant's business).

The presence of packaged inventory has multiple significance. Inventory requires storage. A residence is a far more secure storage site than an automobile. Packaged inventory also indicates enterprise. An enterprise requires instrumentalities and generates records. They are far more likely to be located in a residence than in an automobile. The value and readily fungible nature of cocaine packaged for sale make it unlikely that Hind would store his inventory in his vehicle. See *Commonwealth* v. *Luthy,* 69 Mass. App. Ct. at 107 ("It was a reasonable inference that the drugs were stored someplace other than the automobile, particularly given that [the defendant] was engaged in a drug distribution business, and the quantity of the drugs involved"). Compare *Commonwealth* v. *O'Day,* 440 Mass. at 303 (because defendant likely conducted frequent drug sales inside his home, "it was unlikely that the defendant would keep so large a supply of drugs in the truck while at home"). The lack of any observation of Hind carrying anything from the Explorer into his apartment, or vice versa, does not support a necessary inference that Hind left his inventory in the Explorer. The magistrate could have inferred that Hind kept the cocaine on his person. See *ibid.* ("valuable quantities of crack and powdered cocaine are transported and sold in small bags that can be concealed easily on one's person").

The defendants' argument fails also because the affidavit provided probable cause to search Hind's apartment for the other items listed on the warrant application, in addition to cocaine. Officers were likely to find in Hind's apartment telephone records to tie Hind to the telephone number used by CI and papers to substantiate Hind's ownership of the Explorer. The bills generated by Hind's use of his telephone would be valuable evidence because he used the telephone to arrange the cocaine sales. See *Commonwealth* v. *Santiago*, 66 Mass. App. Ct. 515, 522 n.16 (2006). There was also probable cause to believe that police would find records of Hind's cocaine distribution business. See *id.* at 522 ("given the nature" of the narcotics sales business, distributors surely keep records); *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. at 107 (where defendant received cellular telephone call at his residence to arrange narcotics sale, magistrate could have inferred that defendant kept records of his drug delivery business at his residence). Compare *Commonwealth* v. *Turner*, 71 Mass. App. Ct. 665, 669 (2008) (where officers recorded serial numbers of money used in controlled purchases, magistrate had substantial basis to conclude "monies from the illegal sales were probably in the residence" of the defendants). Here, the magistrate could infer that Hind kept business records and that the most likely storage place for them was his residence. The police observation of Hind's return to his residence after one of the controlled sales and the additional observation of his departure from his residence shortly after CI placed an order for cocaine by telephone provided probable cause to search the residence for records of a cocaine distribution business.[6]

*Conclusion.* For the foregoing reasons we conclude that Officer Ryder's affidavit in support of the search warrant applica-

---

[6]We note that "[e]ven if the warrant were considered invalid as to the search for drugs, . . . it does not follow that the drugs and other items seized need be suppressed." *Commonwealth* v. *Turner*, 71 Mass. App. Ct. at 670. If officers seized the items in "plain view 'within the scope and intensity of the search permitted under the terms of the valid portions of the warrant,' . . . they need not be suppressed." *Ibid*, quoting from *Commonwealth* v. *Lett*, 393 Mass. 141, 147 (1984). In other words, if the warrant were valid as to the noncocaine evidence of cocaine distribution, and if the officers found the cocaine in plain view while searching for the other evidence, suppression of the cocaine would not be required.

tion provided probable cause to search Hind's apartment for cocaine and other evidence of a cocaine distribution business. Police observations and CI's statements established a necessary linkage between cocaine distribution and the apartment. We reverse the order allowing the defendants' motions to suppress evidence and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*