Commonwealth *v.* Lima.

COMMONWEALTH *vs.* DAVID LIMA.

No. 09-P-1295.

Plymouth. December 14, 2010. - August 16, 2011.

Present: TRAINOR, KATZMANN, & RUBIN, JJ.

*Controlled Substances. Firearms. Probable Cause. Search and Seizure,* Probable cause, Warrant, Affidavit. *Constitutional Law,* Probable cause, Confrontation of witnesses. *Practice, Criminal,* Motion to suppress, Warrant, Affidavit, Confrontation of witnesses, Harmless error. *Evidence,* Certificate of drug analysis, Ballistician's certificate. *Error, Harmless.*

Where an affidavit in support of a search warrant failed to establish probable cause to search the criminal defendant's residence for cocaine, but did establish (based on the affiant's special knowledge, which was supported by indirect evidence and a sufficient timely nexus between the residence and the illegal activity) probable cause to believe that related proceeds and records were located there, no error arose from the trial judge's denial of the defendant's pretrial motion to suppress evidence of records and proceeds found at the residence [115-122]; further, with respect to other evidence found by police while conducting the search, this court remanded the matter for a determination whether such evidence constituted permissible fruits of the search [122-123].

At the trial of indictments charging various controlled substance, firearm, and ammunition offenses, the erroneous admission in evidence of certificates of drug and ballistics analysis, in violation of the defendant's constitutional right to confrontation, was not harmless beyond a reasonable doubt and required a new trial on the defendant's drug and firearm convictions [123]; however, the admission in evidence of a certificate of ballistics analysis with regard to the ammunition charge was harmless beyond a reasonable doubt, where the fact that the firearms were loaded when discovered by police provided overwhelming evidence that the cartridges met the statutory definition of ammunition [123-124].

INDICTMENTS found and returned in the Superior Court Department on August 9, 2002.

A pretrial motion to suppress evidence was heard by *Jeffrey A. Locke,* J., and the cases were tried before *Maureen B. Hogan,* J.

*Sean J. Gallagher* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

KATZMANN, J. Having been convicted by a Superior Court jury of various drug, firearm, and ammunition offenses, the defendant, David Lima, now appeals. The principal contention is that the motion judge erroneously denied his motion to suppress because the affidavit in support of the search warrant failed to demonstrate probable cause to search his residence. We conclude that, although the affidavit in support of the search warrant failed to establish probable cause to believe that cocaine was in the residence, the affidavit *did establish* probable cause to believe that related proceeds and records were located in that apartment.

*Discussion.* A. *Motion to suppress.* The charges against the defendant arose from the execution of search warrants at two Brockton apartments, one located at 29 Goddard Road (a purported "stash house") and the other at his residence at 191 Belmont Street.[1] Brockton police Detective Paul Bonanca's investigation leading up to the issuance of these search warrants had four components: information from two confidential informants (CI1 and CI2) regarding a cocaine distribution enterprise operated by the defendant; police surveillance; two controlled purchases of cocaine from 29 Goddard Road where the defendant was believed to be storing drugs; and police corroboration and record checks relating to 191 Belmont Street.

The defendant appeals from the denial of the motion to suppress the cocaine and records found during the search of 191 Belmont Street, pursuant to a warrant to search the premises there for "[c]ocaine [and] . . . [a]ny monies, records, or paraphernalia related to the use or distribution of [cocaine]." He claims that the search warrant affidavit did not provide a sufficient nexus between the defendant, the criminal activity, and 191 Belmont Street.[2]

"[O]ur inquiry as to the sufficiency of the search warrant

---

[1]On August 9, 2002, a grand jury returned a sixteen count indictment against the defendant. There were six drug charges: trafficking in cocaine in an amount over 200 grams, and possession with intent to distribute cocaine, methamphetamine, marijuana, methandrostenolone, and stanozolol. Each of these drug charges was coupled with a count charging a school zone offense. The defendant was also charged with unlawful possession of a firearm and a large capacity firearm. There were two additional counts of unlawful possession of ammunition.

[2]The defendant's motion to suppress concerns the following charges, all of which are based on evidence collected as result of the search of 191 Belmont

application always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). "To establish probable cause to obtain a search warrant, the affidavit must 'contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched.' " *O'Day*, 440 Mass. at 300, quoting from *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980). "To arrive at that conclusion, the magistrate 'may apply common knowledge and may draw reasonable inferences from the facts before him.' " *Commonwealth* v. *Santiago*, 66 Mass. App. Ct. 515, 521 (2006), quoting from *Commonwealth* v. *Taglieri*, 378 Mass. 196, 198, cert. denied, 444 U.S. 937 (1979). See generally Smith, Criminal Practice & Procedure, § 4.43 (3d ed. 2007). We consider the probable cause question with respect first to the cocaine, and then as to the records and proceeds.

1. *Cocaine.* The defendant argues that the affidavit that accompanied the warrant application provided insufficient evidence to support a probable cause determination that cocaine was located at 191 Belmont Street. We agree. The affidavit revealed that the defendant had taken up residence in the second and third floors at 191 Belmont Street.[3] However, "probable cause to expect that drugs will be present in a home is not established

---

Street: possession of firearms (counts 003 and 006), possession of ammunition (counts 004 and 005), possession of cocaine with intent to distribute and its accompanying school zone charge (counts 007 and 008), possession of meth-androstenolone with intent to distribute and its accompanying school zone charge (counts 013 and 014), and possession of stanozolol with intent to distribute and its accompanying school zone charge (counts 015 and 016).

The conviction of trafficking in cocaine and its accompanying school zone charge (counts 001 and 002) were based solely on evidence seized from 29 Goddard Road and would not be disturbed by suppression of the evidence from 191 Belmont Street.

Methamphetamine was found at both 29 Goddard Road and 191 Belmont Street. Accordingly, if the methamphetamine found at 29 Goddard was sufficient to convict the defendant on this charge and its accompanying school zone charge (counts 009 and 010), these charges would also be unaffected by suppression of evidence from 191 Belmont Street.

[3]The affidavit indicates that detectives spoke to the property owner of 191 Belmont Street who stated that the property was a two-family house; the first-

by the fact that the defendant lives there." *Commonwealth* v. *Pina*, 453 Mass. 438, 441 (2009) (citations omitted). Rather, the affidavit must contain "specific information" explaining why there was probable cause to believe that cocaine would be found at the defendant's home other than it being the residence of the defendant. *Ibid.* See *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907, 908 (2003).

Here, such "specific information" from which we could infer that cocaine was located in the 191 Belmont Street apartment is absent from the affidavit. Not a single drug deal was observed, suspected, or reported to have occurred at 191 Belmont Street. Contrast *O'Day*, 440 Mass. at 302 (frequent, brief visitations to defendant's residence consistent with drug distribution and storage). In fact, the affidavit explicitly states that the 191 Belmont Street apartment was unlikely to contain narcotics. The defendant's apparent method of distribution, as supported by the facts and Bonanca's inferences, was to distribute and store drugs at 29 Goddard Road and not at 191 Belmont Street.

Accordingly, this case is unlike cases where drug dealers were observed leaving their residence prior to making a sale at a location where they would not have a stash of drugs. Contrast *O'Day*, 440 Mass. at 304-305 (inferring supply of drugs at home where defendant departed from his residence to bar to consummate drug deal). Because the sales in question all took place at 29 Goddard Road, where police believed the defendant was storing the drugs, observations of the defendant departing from 191 Belmont Street prior to drug sales or returning there immediately after sales do not necessarily support an inference that the defendant stored cocaine at 191 Belmont Street. See *Commonwealth* v. *Medina*, 453 Mass. 1011 (2009).

In sum, the affidavit failed to present probable cause to search 191 Belmont Street for cocaine.

floor apartment was unoccupied and the defendant was currently residing on the second and third floors. The police corroborated the property owner's disclosure by conducting surveillance at 191 Belmont Street; they observed the defendant or a 1997 BMW sedan parked in the parking lot or an adjacent parking lot on eight separate days between March 23 and April 26, 2002. Record checks confirmed that the 1997 BMW used by the defendant was registered to Olivia Porter. The defendant's telephone number was registered to "Olivia Porter, c/o David Lima."

2. *Proceeds and records.* The Commonwealth argues that any evidence found at 191 Belmont Street of drug contraband, as well as the ammunition and firearms found there, were fruits of a permissible search for proceeds and records. We agree. The affidavit does provide probable cause to believe that proceeds and records related to the defendant's cocaine operation at 29 Goddard Road would exist in the 191 Belmont Street apartment. Probable cause to search for proceeds and records is sometimes found *in addition* to probable cause to search for drugs. See, e.g., *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. 102, 107 (2007); *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 290, 299-300 (2009). However, in some circumstances, probable cause exists to search only for proceeds or records related to drug distribution, but not to search for the drugs themselves. See *Santiago*, 66 Mass. App. Ct. at 522 ("records, ledgers, or proceeds"); *Commonwealth* v. *Turner*, 71 Mass. App. Ct. 665, 669 (2008) (proceeds).

The affidavit here was premised on Bonanca's specialized knowledge of drug distribution operations.[4] Bonanca stated that based on his training and past experience, it is common for narcotics organizations to maintain one empty dwelling for the sole purpose of drug storage and distribution, and another, separate dwelling to house the proceeds and records of the drug operation. Bonanca stated that "[d]rug distributors use this strategy for the purpose of eliminating any personal connection with any seized narcotics." In evaluating an affidavit for probable cause, "weight must be given to the special experience of a law enforcement officer who has executed an affidavit. For example, where such an officer states that he has drawn inferences from facts which an inexperienced person might not draw from those facts, the magistrate may rely on those inferences." *Santiago*, *supra* at 521, quoting from *Taglieri*, *supra* at 199.

Moreover, "taking the affidavit as a whole, interpreting it in

---

[4]Detective Bonanca, a six-year member of the Brockton police narcotics and vice unit, had significant experience and training in narcotics investigations, received a master's degree in criminal justice, attended numerous courses on narcotics investigations and participated in undercover purchases, surveillance, and arrests during narcotics investigations with State and Federal law enforcement.

a commonsense fashion," there was sufficient indirect evidence to support Bonanca's inference that 191 Belmont Street contained proceeds and records. *Santiago*, *supra* at 522. In *Santiago*, the court found sufficient indirect evidence supporting the affiant's conclusion that records, ledgers or proceeds were contained in a dwelling based on the following information:

> "[1] that the defendant was a drug dealer responsible for a large-scale operation; [2] that he resided at, or at least had unlimited access to, [the residence]; [3] that he and his subordinates used record-generating cellular telephones; [4] that the bulk of the narcotics were *not* kept at [the residence]; and [5] that the defendant had access to a [vehicle], from which drugs were delivered and in which he met with his compatriot to transact 'business.' "

*Ibid.* (emphasis and numeration added). We conclude that the affidavit here provided similar indirect evidence to warrant a probable cause finding, and that those factors collectively provide the necessary "specific information" providing "a sufficient nexus between the defendant's drug-selling activity [in the stash house on 29 Goddard Road] and his residence to establish probable cause to search the residence [for money and records]." *Pina*, 453 Mass. at 440-441. See *Smith*, 57 Mass. App. Ct. at 908. We note that *Pina* did not involve a search of a residence for money or records relating to drug activity in a stash house for which there was probable cause to search for contraband. There was thus no need or occasion for the *Pina* court to comment on the validity or applicability of the *Santiago* factors. We discern no reason why those factors cannot supply the necessary link here for probable cause, and we consider them now.

First, it was reasonable to infer that the defendant was a drug dealer[5] responsible for a large-scale operation. We note that the *Santiago* case does not define "large-scale operation." However,

[5]Because the information in the affidavit is derived, in part, from two informants, the Commonwealth must satisfy the *Aguilar-Spinelli* standard for probable cause. *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985). Here, both prongs of the *Aguilar-Spinelli* test, basis of knowledge and veracity, are satisfied. An informant who admits to buying drugs from the target suffices to show a basis of knowledge. *Commonwealth* v. *Montanez*, 410

because the instant defendant conducted business with at least one associate, maintained an empty dwelling for the purpose of distributing and storing drugs, and supplied drugs to Shaun Hillegass, from whom police seized trafficking quantities of cocaine, such a conclusion is warranted. Compare *id.* at 516-522. In an operation of this scale, business records can be expected. See *id.* at 522; *Rodriguez*, 75 Mass. App. Ct. at 298-299 (evidence sufficient to find drug enterprise; drug enterprises generate records).

Second, the statement from the property owner, combined with police surveillance, provides sufficient evidence to infer that the defendant resided at 191 Belmont Street.[6]

Third, the affidavit provided evidence of the defendant's custom of arranging drug sales through record-generating cellular telephone calls.[7] The bills generated by the defendant's use of his telephone reasonably could be expected to be found in the defendant's residence and would be of significant evidentiary value. *Santiago*, *supra* at 521-22 & n.16. Further, the defendant's cellular telephone use *inside* the 191 Belmont Street apartment[8] buttresses the inference that business records were kept at that location. See *Luthy*, 69 Mass. App. Ct. at 107 (where defendant received cellular telephone call at his residence to arrange drug sale, magistrate can infer that defendant kept records of his drug business at his residence); *Rodriguez*, *supra* at 300.

Fourth, the police surveillance revealing drug activity at 29 Goddard Road but not at 191 Belmont Street, is consistent with

Mass. 290, 299-300 (1991). Here, both informants accordingly had a basis of knowledge. Veracity is here satisfied as well. CI1 had executed four controlled "buys" in the past; CI2 successfully executed two controlled buys from the defendant. See *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 513, 519 (1999) (while not required, controlled buys significantly strengthen informant's reliability under *Aguilar-Spinelli* test). Further, any deficiencies in the veracity of the informants was buttressed by corroboration through police investigation and surveillance, detailed extensively in the affidavit. See *id.* at 517.

[6]In *Santiago*, uncertainty existed as to whether the apartment searched was in fact the defendant's residence. *Santiago*, *supra* at 518 & n.10.

[7]CI1 and CI2 stated that, to arrange a drug sale, the informant called the defendant on his telephone; both controlled buys were conducted in this manner as well.

[8]During the controlled buy on or about April 26, 2002, shortly after the informant called the defendant on his cellular telephone, police observed the defendant leave 191 Belmont Street.

Bonanca's opinion, noted above, that in an effort to conceal a personal connection with the seized contraband, the defendant likely maintained a separate dwelling to house the proceeds and records of the drug operation, if not the drugs themselves.

Fifth, the defendant had access to a vehicle, specifically a 1997 BMW sedan. Although here, unlike in *Santiago*, no evidence suggests that the vehicle was instrumental in drug deliveries, the defendant's access to the 1997 BMW suggests an alternative inference. On multiple occasions police observed the defendant driving directly to or from 191 Belmont Street to consummate drug deals.[9] One could infer that the defendant would be unwilling to keep proceeds in his car or at 29 Goddard Road (an unoccupied apartment the location of which was known to several customers) due to risk of theft. See *O'Day*, 440 Mass. at 303. It follows that the defendant likely transported his proceeds from the deals to 191 Belmont Street. *Luthy*, *supra* at 108 (likely that defendant, who remained under surveillance after drug sale, brought fruits of transaction into his house). See *Turner*, 71 Mass. App. Ct. at 669.

Finally, while not identified as a factor in *Santiago*, the defendant's concealment of his residence at 191 Belmont Street buttresses the probability that proceeds and records would be kept at this residence. The defendant signed no rental agreement and paid his rent in cash. This evidence supports the inference that the defendant was attempting to conceal items in the apartment. In sum, the indirect evidence provided by the affidavit sufficiently supported Bonanca's inference that proceeds and records were kept at 191 Belmont Street.

Moreover, the affidavit presents a strong temporal nexus between 191 Belmont Street and the defendant's drug business, such that it presents probable cause that proceeds and records were stored at this residence. Probable cause to search a location requires a timely nexus to the illegal activity. *Pina*, 453 Mass. at 442. Here, the search warrant was obtained on April

---

[9]The defendant was observed by police (1) departing from 191 Belmont Street to a suspected drug deal at 29 Goddard Road (April 12, 2002); (2) returning to 191 Belmont Street from a suspected drug sale at 29 Goddard Road (April 25, 2002); and (3) leaving 191 Belmont Street, and immediately returning there after a controlled purchase of cocaine at 29 Goddard Road (on or about April 26, 2002).

26, 2002, on or about the date of the second controlled purchase, in which the defendant left from and returned to 191 Belmont Street. See *Turner, supra* at 669 (timely nexus established where police observed defendant return to his residence after three drug deals, the last within seventy-two hours of affidavit). Furthermore, the evidence that the defendant sold drugs from November, 2001, through April, 2002, and lived at 191 Belmont Street for about six months prior to his arrest on April 19, 2002, supports an inference that he was dealing drugs for, roughly, the entire time he was living at this apartment.

In sum, based on the affiant's specialized knowledge, which was supported by indirect evidence and a sufficient temporal nexus, the clerk-magistrate properly concluded that the affidavit established probable cause to search the 191 Belmont Street apartment for proceeds and records. See *Santiago, supra* at 522 (affiant's specialized knowledge coupled with indirect evidence in affidavit sufficient for magistrate's probable cause conclusion that records could be found in defendant's suspected residence). See also *Pina, supra* at 442 ("Probable cause to search a particular location for contraband requires a timely . . . nexus to the illegal activity"). Accordingly, the magistrate's reliance on Detective Bonanca's inference that 191 Belmont Street contained proceeds and records was warranted.[10]

Although the "warrant was considered invalid as to the search for drugs[,] . . . it does not follow that the drugs and other items seized need be suppressed." *Turner, supra* at 670. Rather, if the items, including any narcotics, seized from the 191 Belmont Street apartment "were seized in plain view 'within the scope and intensity of the search permitted under the terms of the valid portions of the warrant,' namely the search for [proceeds and records], they need not be suppressed." *Ibid.*, citing *Commonwealth* v. *Lett*, 393 Mass. 141, 147 (1984). See *Rodriguez, supra* at 300, n.6. For example, the two loaded guns that form the basis of the ammunition charges were discovered on a

---

[10]The presence of the additional *Santiago* factors distinguishes this case from *Commonwealth* v. *Dillon*, 79 Mass. App. Ct. 290, 297 (2011) (affidavit "did not set forth adequate particularized evidence to establish a substantial and timely nexus between the defendant's drug-selling activity and the . . . residence sufficient to establish probable cause to search the . . . residence").

bedroom floor in 191 Belmont Street. Because these items were in plain view to police officers during the search, they should not be suppressed. In the event that the defendant believes that the drugs and other items seized from 191 Belmont Street did not come within the officers' plain view while they were conducting a legal search in places where proceeds and records might reasonably be found, he may on remand seek a hearing on that issue. See *Turner, supra* at 670.

B. *Ballistics and drug certificates.* The Commonwealth concedes, as it must, that it was a violation of the confrontation clause to admit the certificates of ballistics and drug analysis. See *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009); *Commonwealth* v. *Vasquez,* 456 Mass. 350, 351-352 (2010). Moreover, because the defendant objected to the admission of the certificates on constitutional grounds, we review the errors to determine whether they were harmless beyond a reasonable doubt. *Commonwealth* v. *Muniz,* 456 Mass. 166, 168-69 (2010), citing *Commonwealth* v. *Molina,* 439 Mass. 206, 211-212 (2003). Here, because the admission of these certificates was not harmless beyond a reasonable doubt, we agree with the Commonwealth's concession that this case must be remanded for a new trial on the drug[11] and firearm[12] convictions.

The defendant also argues that his convictions on ammunition charges must be overturned because the admission of a certificate of ballistics analysis with regard to one of the ammunition charges violated his constitutional rights where the expert who conducted the ballistics tests was not available for cross-examination. *Commonwealth* v. *Brown,* 75 Mass. App. Ct. 361, 363 (2009). We disagree. The statute requires only that the ammunition was "*designed* for use in any firearm." G. L. c. 140, § 121 (emphasis added). See *Muniz, supra* at 173; *Commonwealth* v. *Morales,* 76 Mass. App. Ct. 663, 671 (2010). Here, as in *Muniz* and *Morales,* "the Commonwealth introduced in evidence the gun, the magazines, and the testimony of an officer that the gun was loaded when discovered." See *Muniz, supra* at 172-173; *Morales, supra* at 671. In this case, both the silver handgun (count 004) and the AB10 semiautomatic pistol (count

---

[11]Counts 001, 002, 007-010, and 013-016.

[12]Counts 003 and 006.

005) were loaded when the officers found them. "The cartridges themselves and the officer's testimony that they were found in the magazine[s], which [were] in the gun[s] at the time [they] were seized, provide overwhelming evidence that the cartridges met the statutory definition of ammunition." *Muniz, supra* at 173. See *Morales, supra* at 671. Accordingly, we conclude that the admission of the certificate with respect to this charge was harmless beyond a reasonable doubt and affirm the defendant's convictions for unlawful possession of ammunition in counts 004 and 005.[13]

*Conclusion.* We affirm the motion judge's decision to deny the defendant's motion to suppress evidence of records and proceeds found at 191 Belmont Street. With respect to other evidence found while conducting a search for proceeds and records, we remand for further proceedings consistent with this opinion to make a determination as to the permissible fruits of the search. We vacate the drug and firearm judgments, the jury verdicts are set aside, and we remand for further proceedings. The remaining judgments are affirmed.

*So ordered.*

---

[13]As has been noted, the two loaded guns that form the basis of the ammunition charges were discovered on a bedroom floor in 191 Belmont Street. Because these items were in plain view to police officers during the search, the ammunition convictions would not be disturbed by the suppression of any other evidence at 191 Belmont Street.