## COMMONWEALTH *vs.* EXSEL MUNIZ.

Hampden. December 8, 2009. - March 2, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Controlled Substances. Firearms. Evidence,* Certificate of drug analysis, Ballistician's certificate, Expert opinion. *Constitutional Law,* Confrontation of witnesses. *Witness,* Expert.

At the trial of indictments charging, inter alia, possession of a firearm, the erroneous admission in evidence of a certificate of ballistics analysis, over the defendant's objection and without testimony from an analyst, was not harmless beyond a reasonable doubt, where there was insufficient evidence from which to conclude that the jury did not rely on the certificate's compelling evidence of the handgun's operability to determine whether the handgun met the statutory definition of a firearm [168-172]; however, with regard to an indictment charging the defendant with possession of ammunition without an identification card, the admission of the certificate was harmless beyond a reasonable doubt, in light of the overwhelming evidence at trial that the cartridges found by the police met the statutory definition of ammunition [172-173].

This court reversed a criminal defendant's convictions of unlawful possession of cocaine and marijuana and set aside the verdicts, where it was possible that the defendant was convicted of a crime for which he was not charged, given the grand jury's indictment, which referred to a single instance of possession, and this court's inability to discern the specific instance of possession to which the indictment referred. [174]

INDICTMENTS found and returned in the Superior Court Department on October 12, 2005.

The cases were tried before *Bertha D. Josephson*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Susan E. Taylor* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

The following submitted briefs for amici curiae:

*Kathryn Hayne Barnwell* for John Dessources.

*Debra S. Krupp*, Committee for Public Counsel Services, for Committee for Public Counsel Services.

*Todd C. Pomerleau, Danielle M. Wood, & Sarah M. Unger* for Pomerleau Wood LLP.

IRELAND, J. In 2007, the defendant was tried and found guilty of unlawful possession of a firearm, a firearm without a firearms identification card, ammunition without an identification card, a class B controlled substance (cocaine), and a class D controlled substance (marijuana). He was also convicted on two indictments charging armed robbery while masked. The defendant appealed and his convictions were affirmed. *Commonwealth* v. *Muniz,* 74 Mass. App. Ct. 1110 (2009). We granted the defendant's application for further appellate review limited to whether, in light of the United States Supreme Court's decision in *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009) (*Melendez-Diaz*), drug and ballistics certificates, admitted in evidence over the defendant's objection that they violated his right under the Sixth Amendment to the United States Constitution to confront and cross-examine witnesses, were harmless beyond a reasonable doubt. We conclude that the admission of the certificates was not harmless beyond a reasonable doubt with regard to the defendant's convictions of unlawful possession of a firearm and unlawful possession of cocaine, and we reverse his convictions. We reverse his conviction of unlawful possession of marijuana on separate grounds. We affirm his conviction of unlawful possession of ammunition because the error in admitting the ballistics certificate with regard to that conviction was harmless beyond a reasonable doubt.

*Facts and procedural history.* We present the facts the jury were warranted in finding only insofar as they aid in understanding the issues before us, reserving details for our discussion.

On September 1, 2005, as part of an investigation of the robbery at a store, Holyoke police officers proceeded to a nearby apartment building where the defendant resided. There, they saw the defendant standing in front of the building's doorway. They noticed a strong odor of marijuana. One officer saw the defendant drop something, and a marijuana cigarette was found on the ground near the defendant's foot. In a subsequent search of the defendant's apartment conducted pursuant to a search warrant, police found a loaded handgun hidden inside a stove vent, a magazine, and fourteen cartridges. A police officer testified that he found a "small bag of cocaine" and "two small bags of marijuana."

A State police ballistics expert signed a certificate stating that the gun was a nine millimeter Beretta semiautomatic pistol with

a five-inch barrel; that he test-fired the gun using one of the cartridges the officers found and two live cartridges from the inventory of the firearms identification section of the State police; and that "[n]o malfunctions were noted." A Department of Public Health assistant analyst signed a certificate stating the latter two substances the officer found were cocaine and marijuana.[1] These certificates were admitted in evidence over the defendant's objection.

The defendant appealed from his convictions arguing, in relevant part, that under *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*), the admission of the drug and ballistics certificates violated his constitutional rights. *Id.* at 51-52 ("ex parte in-court testimony or its functional equivalent" such as affidavits, confessions, depositions, and pretrial statements are testimonial and subject to the confrontation clause). In his appeal, the defendant noted that *Melendez-Diaz* was before the United States Supreme Court, but no decision had issued.

In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court affirmed the defendant's convictions, stating that, with regard to the admission of the certificates, it was bound by this court's decision in *Commonwealth* v. *Verde*, 444 Mass. 279, 280, 283-284 (2005) (*Verde*) (drug certificates of analysis introduced in evidence at trial were business records and did not implicate the confrontation clause). *Commonwealth* v. *Muniz*, 74 Mass. App. Ct. 1110 (2009). However, the court acknowledged the Supreme Court's pending decision in *Melendez-Diaz* and preserved the defendant's right to seek postconviction relief on the issue of the constitutionality of the admission of the certificates in evidence. When the *Melendez-Diaz* decision issued, the Court overruled our holding in *Verde*, stating that drug certificates were the functional equivalent of an affidavit and therefore testimonial. *Melendez-Diaz, supra* at 2532. Admission of certificates without a showing that the analyst was unavailable and that the defendant had a prior opportunity to cross-examine him or her was error. *Id.*

*Discussion.* The Commonwealth concedes, as it must, that it was error to admit the ballistics and drug certificates. Because

---

[1] The same assistant analyst signed a certificate attesting that the cigarette found near the defendant's foot was marijuana. The certificate was admitted over defense objection.

the defendant objected to the admission of the certificates on constitutional grounds,[2] we review the errors to determine whether they were harmless beyond a reasonable doubt. *Commonwealth* v. *Molina*, 439 Mass. 206, 211-212 (2003).

When determining whether an error was harmless beyond a reasonable doubt, we consider

> " 'whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdicts,' *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990)[. O]ur focus is not on whether the jury could have convicted the defendant had the tainted evidence been excluded; it is not enough for the Commonwealth to demonstrate that its other, properly admitted evidence was 'sufficient' to convict the defendant or that the inadmissible evidence was 'consistent' with the admissible evidence. *Commonwealth* v. *Dagraca*, 447 Mass. 546, 554-555 (2006). . . . Rather, we ask whether, on the totality of the record before us, weighing the properly admitted and the improperly admitted evidence together, we are satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the jury and did not contribute to the jury's verdicts. . . . An assertion that the error is harmless . . . is most particularly vulnerable where the over-all strength of the Commonwealth's case radiates from a core of tainted evidence. See, e.g., *Commonwealth* v. *Dagraca, supra* at 554 . . . ."

*Commonwealth* v. *Tyree*, 455 Mass. 676, 701-702 (2010). With these principles in mind we turn to the admission of the ballistics and drug certificates in this case.

1. *Ballistics certificate.* Concerning the two indictments charging possession of a firearm, the Commonwealth was required to prove that "the instrument in question [was] (1) a weapon, (2) capable of discharging a shot or bullet, and (3) under a certain length." *Commonwealth* v. *Sampson*, 383 Mass. 750, 753 (1981), citing G. L. c. 140, § 121. At issue here is whether the Commonwealth met its burden to prove that the gun was capable of discharging a shot or bullet. Concerning the ammunition,

---

[2]The defendant makes no argument that his convictions of armed robbery while masked are affected by *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009).

the Commonwealth had to prove that the item in question was "designed for use in any firearm." G. L. c. 140, § 121.[3]

The Commonwealth submitted a "certificate of examination and test firing" in this case. The certificate not only stated that a test firing of the gun included the use of one of the cartridges that was found and that there were no malfunctions, but also stated that the gun and ammunition were items "within the meaning of" G. L. c. 140, § 121. The analyst who signed the certificate did "swear and affirm" that he was "qualified as a Ballistics Expert . . . in compliance with [G. L. c. 140, § 121A,] for the issuance of this certificate."[4] Moreover, the notary public's signature was preceded by the statement: "I know this subscriber to be a qualified Ballistics Expert of the Massachusetts State Police Firearms Identification Section."

When the judge instructed the jury concerning the charges of unlawful possession of a firearm and ammunition, in addition to defining the elements that Commonwealth had to prove, she stated:

> "[A] certificate has been entered in evidence, a certificate by a ballistics expert of the firearms identification section of the Department of Public Safety, and the law in Massachusetts has a statute that allows such certificate to be entered in evidence as . . . prima facie evidence as to whether or not the item furnished is a firearm . . . or ammunition as defined in Massachusetts . . . . [T]hat certificate . . . is evidence which you may consider if you wish on that issue."

The Commonwealth argues that the admission of the ballistics certificate attesting that the gun and ammunition were within the meaning of the statute was harmless beyond a reasonable doubt.

a. *Firearm.* At trial, the Commonwealth offered in evidence

---

[3]General Laws c. 140, § 121, defines "[f]irearm," in relevant part, as "a pistol, revolver or other weapon of any description, loaded or unloaded, from which a shot or bullet can be discharged and of which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a shotgun as originally manufactured."

It defines "[a]mmunition," in relevant part, as "cartridges or cartridge cases, primers (igniter), bullet or propellant powder designed for use in any firearm, rifle or shotgun." *Id.*

[4]General Laws c. 140, § 121A, concerns the issuance of ballistics certificates.

the gun itself; the testimony of the officer who found the gun that it appeared in good condition, had a round in the chamber, and was "ready to be fired"; and the ballistics certificate. The same officer testified that the gun had been sent to the State police laboratory for testing. The ballistics certificate then was introduced in evidence without further comment, other than the defendant's objection that he could not challenge the qualifications of the expert or the method used to test the gun.

Relying on cases that have stated that expert testimony is not necessary to prove that a gun meets the statutory definition of a firearm, the Commonwealth argues that there was enough evidence before the jury for them to determine that the gun was operable. It states that such an inference could be based on the officer's testimony that the gun was in good condition and had a round in the chamber, as well as from the testimony of one of the robbery victims, who stated that the defendant said that he would shoot the victims if they did not remain quiet in the store's office. The Commonwealth also argues that the jury properly were instructed on the legal definition of "firearm," and that the jury instruction concerning the certificate made it clear that consideration of it was "entirely permissive."

It is true that our cases have stated that expert testimony is not necessary to determine whether a revolver is a firearm within the meaning of the statute. See *Commonwealth* v. *Fancy*, 349 Mass. 196, 200, 204 (1965) (where revolver, loaded at time of seizure, and cartridges introduced as evidence, jury could infer that gun was a firearm pursuant to statute); *Commonwealth* v. *Stallions*, 9 Mass. App. Ct. 23, 25-26 (1980) (where revolver and cartridges admitted as exhibits accompanied by testimony concerning them, no expert testimony needed for jury to determine whether revolver operable under statute).[5] However, in the *Fancy* and *Stallions* cases, the issue was the sufficiency of the evidence, not whether introducing particular evidence was harmless beyond a reasonable doubt. *Commonwealth* v. *Fancy*, *supra* at 204 (appeal from denial of motion for directed verdict). *Commonwealth* v. *Stallions*, *supra* at 24-26 (same). See *Commonwealth* v. *Mendes*,

---

[5]Cf. *Commonwealth* v. *Nieves*, 43 Mass. App. Ct. 1, 3 (1997), citing *Commonwealth* v. *Rhodes*, 21 Mass. App. Ct. 968, 969-970 (1986) (unloaded gun alone insufficient to show it was capable of firing and therefore firearm in statutory sense).

44 Mass. App. Ct. 903, 903-904 (1997) (appeal from denial of motion for required finding of not guilty). See also *Commonwealth* v. *Tuitt*, 393 Mass. 801, 809-810 (1985) (affirming conviction of unlawful carrying of firearm where claim evaluated under substantial risk standard for unpreserved error).

Here, there was no evidence that the pistol's firing mechanism was operable other than the certificate that was admitted in evidence in violation of the defendant's constitutional rights. Cf. *Commonwealth* v. *Mendes*, 75 Mass. App. Ct. 390, 397 (2009) (three audible shots, three empty casings, and smell of gunpowder established operability of gun beyond reasonable doubt). The jury were instructed, according to the law then in effect, that a statute permitted them to consider the certificate as prima facie evidence that the gun was a firearm within the meaning of the statute. The instruction did not state that the jury were required to consider the certificate. There also was testimony that the gun had ammunition in it, and the gun itself was an exhibit and could have been examined by the jury. However, these facts alone are not enough evidence to conclude that the jury did not rely on the certificate's compelling evidence of the gun's operability to determine whether the gun met the statutory definition of a firearm. See *Commonwealth* v. *Ware*, 76 Mass. App. Ct. 53, 57 (2009), citing *Commonwealth* v. *Hollister*, 75 Mass. App. Ct. 729, 734 (2009) (gun with round in chamber and loaded magazine admitted in evidence not sufficient for court to conclude that ballistics certificate did not contribute to jury's verdicts). The Commonwealth has not shown that the admission of the certificate was harmless beyond a reasonable doubt. *Commonwealth* v. *Charros*, 443 Mass. 752, 765, cert. denied, 546 U.S. 870 (2005), and cases cited (burden on Commonwealth to show wrongfully admitted evidence did not contribute to verdict).

b. *Ammunition.* The defendant makes no separate argument whether the admission of the ballistics certificate was harmless beyond a reasonable doubt concerning the ammunition. The Commonwealth's evidence of unlawful possession of ammunition was virtually identical to the evidence for the firearms charges: the cartridges themselves, the certificate, and the testimony of the officer who found the gun and cartridges. Concerning the cartridges, however, the officer testified that, when he found the gun, the magazine was in the gun and was loaded

with cartridges, and that one round was in the chamber. These items were admitted in evidence. Here, we conclude that the ballistics certificate's admission concerning the ammunition was harmless beyond a reasonable doubt. The jury were properly instructed that they had to find that the ammunition was "*designed* for use in any firearm*" (emphasis added). The cartridges themselves and the officer's testimony that they were found in the magazine, which was in the gun at the time it was seized, provide overwhelming evidence that the cartridges met the statutory definition of ammunition. See *Commonwealth* v. *Mendes*, 44 Mass. App. Ct. 903 (1997) (Commonwealth must prove that ammunition is designed for use in firearm, not that it is capable of being fired).

2. *Drug certificates.* At trial, the Commonwealth bore the burden of proving that the substances the defendant was charged with possessing were, in fact, "controlled substance[s]" within the meaning of the statute. G. L. c. 94C, § 34. See *Commonwealth* v. *Johnson*, 405 Mass. 488, 488-489 (1989).

a. *Cocaine.* The evidence the Commonwealth introduced to prove that the bag of white powder found was cocaine was the testimony of the officer who found the substance during the search of the defendant's apartment, who stated, "I found a small amount of . . . cocaine"; the bag of cocaine itself; and an analyst's notarized certificate stating that "[t]he powder was found to contain: cocaine . . . [a Class B controlled substance]."[6] As she did with the ballistics certificate, the judge instructed the jury that there was a statute that provided that a certificate of analysis of the Department of Public Health was prima facie evidence of the composition of the substance, and that the jury could consider it in deciding whether the substance was cocaine.

We need not belabor the impact of the certificate concerning the cocaine because the Commonwealth concedes that it cannot meet its burden of proving that the erroneous admission of the certificate was harmless beyond a reasonable doubt.[7] *Commonwealth* v. *Charros, supra.*

---

[6]Language at the bottom of the certificate, citing G. L. c. 111, § 13, states in relevant part, "When properly executed, [this certificate] shall be prima facie evidence of the composition, quality, and the net weight of the [drug] analyzed."

[7]The Commonwealth makes no argument that the chemical composition of

b. *Marijuana.* Marijuana was seized from the defendant at two separate times, albeit on the same day: the first was the marijuana cigarette found near the defendant's foot outside the apartment building, and the second was when police found two "small" bags of marijuana as they searched the defendant's apartment. Each of these instances constitutes a separate "possession" of marijuana. We need not consider the arguments the parties make concerning the admission of the two certificates of analysis of the marijuana because, on its face, the grand jury's indictment refers to a single instance of possession. Because we are unable to discern the specific instance of possession to which the indictment refers, it is possible that the defendant was convicted of a crime for which he was not charged.[8] In these circumstances, his conviction of possession of marijuana must be reversed. *Commonwealth* v. *Barbosa*, 421 Mass. 547, 549-551 (1995) (discussing under art. 12 of Massachusetts Declaration of Rights and G. L. c. 277, § 20).

*Conclusion.* Concerning that portion of the case on which we granted further appellate review, the judgment of conviction on the indictment charging unlawful possession of ammunition is affirmed, and the judgments of conviction on the indictments charging unlawful possession of a firearm, cocaine, and marijuana are reversed and the verdicts set aside. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

the substance ceased to be a live issue at trial after defense counsel's seeming concession in closing argument that it was cocaine. In any event, such an argument would fail because, absent a stipulation, the fact that the substance was cocaine was an essential element of the crime that the Commonwealth must prove beyond a reasonable doubt. See generally *Commonwealth* v. *Love*, 452 Mass. 498, 504 (2008) (defendant stipulated to certain elements essential to the Commonwealth's case); *Commonwealth* v. *Gabbidon*, 398 Mass. 1 (1986) (defendant cannot relieve Commonwealth of its burden of proving every element of crime beyond reasonable doubt).

[8]The Commonwealth concedes that the admission of the certificate concerning the bags of marijuana found in the defendant's apartment, like the cocaine, was not harmless beyond a reasonable doubt. Although it argues that there was enough evidence to convict the defendant of possession of the marijuana cigarette, it makes no argument concerning why we should assume that the indictment was for the marijuana cigarette rather than the bags of marijuana.