## COMMONWEALTH *vs.* MOISES MORALES.

No. 06-P-1934.

Plymouth. October 8, 2009. - April 27, 2010.

Present: RAPOZA, C.J., DUFFLY, & MILKEY, JJ.

*Firearms. Controlled Substances. Practice, Criminal,* Confrontation of witnesses. *Constitutional Law,* Confrontation of witnesses. *Evidence,* Certificate of drug analysis, Ballistician's certificate. *Constitutional Law,* Harmless error. *Error, Harmless.*

Discussion of the Federal and State standards for determining whether a constitutional error was harmless beyond a reasonable doubt. [665-667]

At the trial of an indictment charging possession of a class A substance (heroin) with intent to distribute, the admission in evidence of a certificate of drug analysis, without accompanying testimony from the laboratory analyst who produced it, in violation of the defendant's constitutional right to confront witnesses against him, was not harmless beyond a reasonable doubt, where the record disclosed a dearth of independent evidence as to the nature of the substance at issue, and therefore, this court could not conclude that the introduction of the certificate did not contribute to the conviction. [667-669]

At the trial of indictments charging possession of a firearm with a defaced serial number, unlawful possession of ammunition, and unlawful possession of a firearm, the admission of a ballistics certificate, without accompanying testimony from the ballistician who produced it, in violation of the defendant's constitutional right to confront witnesses against him, was not harmless beyond a reasonable doubt, where the fact that the gun had ammunition in it bore on the question whether the gun was operable but was not of such strength as to conclude that the admission of the ballistics certificate did not contribute to the convictions regarding possession of the firearm, given that the Commonwealth referred to the certificate several times at trial [669-671]; however, the admission of the certificate was harmless with regard to the conviction of possession of ammunition, where the properly admitted evidence of the gun and its magazines, as well as a police officer's testimony that the gun was loaded when discovered and that the cartridges in question were found in the magazines, provided overwhelming evidence that the cartridges met the statutory definition of ammunition [671].

INDICTMENTS found and returned in the Superior Court Department on April 19, 2002.

The cases were tried before *Linda E. Giles,* J.

*Cynthia Vincent Thomas* for the defendant.

*Christine M. Kiggen,* Assistant District Attorney, for the Commonwealth.

RAPOZA, C.J. This case returns to our court pursuant to a remand order from the United States Supreme Court following its decision in *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009) (*Melendez-Diaz*). See *Morales* v. *Massachusetts,* 129 S. Ct. 2858 (2009). In our previous decision, *Commonwealth* v. *Morales,* 71 Mass. App. Ct. 587, 588-589 (2008), we affirmed the defendant's convictions of possession of a firearm with a defaced serial number, G. L. c. 269, § 11C; unlawful possession of ammunition, G. L. c. 269, § 10(*h*); unlawful possession of a firearm, G. L. c. 269, § 10(*a*); and possession of a class A substance (heroin) with intent to distribute, G. L. c. 94C, § 32(*a*), holding, inter alia, that there was no error in the admission in evidence of a ballistics certificate.

The defendant now argues, in light of the decision in *Melendez-Diaz,* that the admission of both the ballistics certificate and a drug certificate, without accompanying testimony from the ballistician and lab analyst who produced them, violated his confrontation rights under the Sixth Amendment to the United States Constitution and constituted error that was not harmless beyond a reasonable doubt. We agree in part and reverse three of the defendant's four convictions.

*Facts.* Acting on warrants to arrest the defendant and an allegation that the defendant had assaulted his girlfriend, Brockton police officers pulled over a vehicle in which the defendant was a passenger. The defendant was removed from the passenger seat, handcuffed, and pat frisked. The police recovered from his person a .40 caliber gun with the serial number scratched off, two magazines containing bullets, a knife, twenty-nine bags of a white powder, a cellular telephone, and $375 in cash. The loaded gun was located at the defendant's belt line near the small of his back, when seized by the police officer.

The Commonwealth introduced a ballistics certificate at trial, which stated that the gun seized from the defendant was successfully test fired with no malfunction and that the bullets constituted ammunition. The Commonwealth also introduced a certificate of drug analysis, which stated that the twenty-nine bags found on the defendant contained a net weight of 7.83 grams of heroin. At trial, a detective testified that the substance

seized from the defendant was packaged in a manner consistent with the sale and distribution of heroin.

*Discussion.* The introduction of the ballistics and drug certificates without accompanying testimony from the ballistician and lab analyst who produced them violated the defendant's Sixth Amendment right to confront and cross-examine the witnesses against him. See *Melendez-Diaz,* 129 S. Ct. at 2532. We must now determine whether the erroneous admission of the certificates was harmless beyond a reasonable doubt.[1]

1. *Harmless error standard.* a. *Federal law.* In *Chapman* v. *California,* 386 U.S. 18, 21 (1967) (*Chapman*), the Supreme Court held that Federal law governs whether Federal constitutional errors are harmless. The court ruled that a constitutional error can be harmless if "the beneficiary of a constitutional error . . . prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24. The court also stated that there was "little, if any, difference" between this standard and the standard articulated in *Fahy* v. *Connecticut,* 375 U.S. 85, 86-87 (1963): "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Ibid.*

Two years after *Chapman,* the Supreme Court decided *Harrington* v. *California,* 395 U.S. 250, 254 (1969), and held that "the case against [the defendant] was so overwhelming that we conclude that [the constitutional error] was harmless beyond a reasonable doubt." While adding the "overwhelming evidence" factor into the harmless error analysis, the court also reaffirmed the test it set out in *Chapman. Harrington* v. *California,* 395 U.S. at 254 ("We do not depart from *Chapman*; nor do we dilute it by inference. We reaffirm it").

In *Delaware* v. *Van Arsdall,* the Supreme Court confirmed

---

[1]The Commonwealth's argument that the defendant did not preserve an objection on constitutional grounds to the admission of the certificates at trial is without merit. At trial, defense counsel objected to the admission of both the ballistics and drug certificates with sufficient specificity as to preserve the issue for appeal. See *Commonwealth* v. *Depina,* 456 Mass. 238, 248 n.8 (2010). In any event, in its recent decision, *Commonwealth* v. *Vasquez,* 456 Mass. 350, 356-359 (2010), the Supreme Judicial Court held that even unpreserved errors based on *Melendez-Diaz* are entitled to the more favorable standard of review. Thus, our review is pursuant to the harmless beyond a reasonable doubt standard.

that the analysis in *Chapman* was the standard for determining whether Federal constitutional errors are harmless. 475 U.S. 673, 684 (1986) ("the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis"). The *Van Arsdall* Court also set out a list of factors for courts to consider when conducting such a harmless error review, including the over-all strength of the prosecution's case.[2] *Ibid.*

Chapman remains the touchstone for harmless error analysis. See, e.g., *Sullivan* v. *Louisiana*, 508 U.S. 275, 278-279 (1993); *United States* v. *Gonzalez-Lopez*, 548 U.S. 140, 157 (2006) (Alito, J., dissenting). Moreover, when conducting a *Chapman* analysis, the Supreme Court continues to consider whether the admissible evidence in the case is overwhelming. See, e.g., *Bundy* v. *Florida*, 479 U.S. 894, 897 (1986) (Marshall, J., dissenting from order denying certiorari); *Neder* v. *United States*, 527 U.S. 1, 16-17 (1999).

b. *Massachusetts law.* The Supreme Judicial Court has stated the harmless beyond a reasonable doubt standard in several ways. See *Commonwealth* v. *Marini*, 375 Mass. 510, 520 (1978) ("[I]t would be hard to say that the [error] was without effect on the jury and did not contribute to the verdict"); *Commonwealth* v. *Gilday*, 382 Mass. 166, 178 (1980) ("We should set aside the conviction unless we are 'sure that the error did not influence the jury, or had but very slight effect' "), quoting from *United States* v. *Agurs*, 427 U.S. 97, 112 (1976); *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990) ("The essential question is whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdicts"); *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991) (citing two Supreme Court descriptions of the harmless error test, including "whether there is a reasonable possibility that the evidence complained of might have contributed to the

---

[2]The remaining *Van Arsdall* factors are "[1] the importance of the witness' testimony in the prosecution's case, [2] whether the testimony was cumulative, [3] the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, [and] [4] the extent of cross-examination otherwise permitted." 475 U.S. at 684, citing *Harrington*, 395 U.S. at 254.

conviction," quoting from *Chapman*, and "whether overwhelming evidence of the defendant's guilt exists without the erroneously admitted evidence," citing *Milton* v. *Wainwright*, 407 U.S. 371, 372-373 [1972]); *Commonwealth* v. *Depina*, 456 Mass. 238, 249 (2010) ("[W]e conclude that the error in this case was harmless beyond a reasonable doubt because the lawfully admitted evidence . . . was so overwhelming as to 'nullify any effect [the erroneously admitted evidence] might have had on the jury or the verdict' "), quoting from *Commonwealth* v. *Tyree*, 455 Mass. 676, 704 n.44 (2010).

Despite the varying articulations of the harmless error test set forth in these cases, all cite and rely on the *Chapman* standard. See *Marini, supra* at 520; *Gilday, supra* at 178; *Perrot, supra* at 548; *Perez, supra* at 260-261; *Depina, supra* at 248. Accordingly, in determining whether a constitutional error was harmless, we ask "whether the record establishes 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Commonwealth* v. *Peixoto*, 430 Mass. 654, 660 (2000), quoting from *Chapman, supra* at 24. See *Commonwealth* v. *Vasquez*, 456 Mass. 350, 360-361 (2010).

In answering this question, we consider certain factors discussed by the Supreme Judicial Court in *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983), including the weight of evidence of guilt and the frequency of reference to the erroneously admitted evidence. See *Peixoto, supra* at 660-661. See also *Petrillo* v. *O'Neill*, 428 F.3d 41, 45 (1st Cir. 2005), cert. denied sub nom. *Petrillo* v. *Murphy*, 547 U.S. 1117 (2006) ("*Mahdi* expressly incorporates the federal *Chapman* standard"). The *Mahdi* factors are neither exclusive nor exhaustive. *Mahdi, supra* at 697. *Commonwealth* v. *Waite*, 422 Mass. 792, 801 n.9 (1996). See *Commonwealth* v. *Vardinski*, 438 Mass. 444, 452 (2003) (applying the *Van Arsdall* factors).

2. *Analysis.* We turn now to the question whether the Commonwealth has shown beyond a reasonable doubt that the erroneous admission of the certificates here did not contribute to the verdicts. See *Commonwealth* v. *Hollister*, 75 Mass. App. Ct. 729, 731 (2009).

a. *Drug certificate.* "In a case charging a narcotics offense, the Commonwealth must prove beyond a reasonable doubt 'that

a substance is a particular drug' because such proof is an element of the crime charged." *Vasquez, supra* at 361, quoting from *Commonwealth* v. *McGilvery,* 74 Mass. App. Ct. 508, 511 (2009). In determining whether the admission of the drug certificate was harmless in that regard, "we ask whether, on the totality of the record before us, weighing the properly admitted and the improperly admitted evidence together, we are satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the jury and did not contribute to the jury's verdicts." *Commonwealth* v. *Tyree,* 455 Mass. 676, 701 (2010). See *Commonwealth* v. *Fluellen,* 456 Mass. 517, 526-527 (2010).

Therefore, we consider the Commonwealth's evidence as to the identity of the white powder recovered from the defendant absent the certificate. Not only is the evidence before us not overwhelming, but the record discloses a dearth of independent evidence as to the nature of the substance. Consequently, we cannot conclude beyond a reasonable doubt that the introduction of the drug certificate did not contribute to the defendant's conviction of possession of a controlled substance with intent to distribute.

The circumstantial evidence that the white powder was packaged in a manner consistent with the sale and distribution of heroin did not render the admission of the drug certificate harmless. Evidence of packaging in a particular manner can be probative of the crime of possession of a controlled substance with intent to distribute, but it can also be probative of the crime of possessing a counterfeit substance with the same intent to distribute. *Commonwealth* v. *Pimentel, ante* 236, 239 n.3 (2010). See G. L. c. 94C, § 32G. "It is unlikely that the form of packaging is necessarily proof that a substance is a particular drug." *Commonwealth* v. *Perez, ante* 439, 444 n.4 (2010). Similarly, although the defendant was carrying a loaded weapon, a cellular telephone, and cash, these facts speak to the issue of distribution, not to the identity of the substance as heroin. See *Commonwealth* v. *Vasquez,* 456 Mass. at 366-367 ("Evidence seized . . . included a scale, rubber bands, a substantial amount of cash, sandwich bags, and a walkie-talkie — all relevant on the issue of distribution. But none of this properly admitted evidence established that the substances purchased and seized were 'cocaine,' as the indictments charged").

Moreover, there was no direct evidence establishing the

identity of the powder. See *Commonwealth* v. *Fluellen, supra* at 527. No field testing was performed. Contrast *Commonwealth* v. *Connolly,* 454 Mass. 808, 831 (2009). Nor did a police officer or other witness experienced with drug use opine that the substance was an illegal drug. See *Vasquez, supra* at 365; *Pimentel, supra* at 239. The only direct evidence of the composition of the seized substance was the drug certificate. In these circumstances, the admission in evidence of the drug certificate was not harmless beyond a reasonable doubt, and the defendant's conviction on the drug charge must be reversed. See *Vasquez, supra* at 366.

b. *Ballistics certificate.* The ballistics certificate introduced at trial stated both that the gun seized from the defendant was test fired without malfunction and that the two magazines of bullets recovered from him (one in the gun he carried and the other in his coat pocket) were ammunition. Both the gun and the magazines were exhibits at trial. The Commonwealth also offered the testimony of the officer who recovered the gun and magazines from the defendant. In this respect, the facts of the instant case are very similar to those in *Commonwealth* v. *Muniz,* 456 Mass. 166 (2010).

As in *Muniz, supra* at 172, the admission of the ballistics certificate here was not harmless with respect to the defendant's two firearm possession charges. In order for a gun to be a firearm for statutory purposes, it must be a weapon under a certain length that is operable, or capable of discharging a shot or bullet. See G. L. c. 140, § 121, as inserted by St. 1998, c. 180, § 8. See also *Commonwealth* v. *Ware, ante* 53, 56 (2009). The Commonwealth argues that the evidence that the .40 caliber gun found on the defendant was loaded, had its serial number scratched off, and was located at the defendant's belt line near the small of his back, and that the defendant carried extra ammunition was overwhelming evidence that the gun was operable. We disagree.

We start with the fact that the defendant did not concede at trial that the gun was operable, see *Commonwealth* v. *Brown,* 75 Mass. App. Ct. 361, 363 (2009), nor was there any evidence that the gun had been fired. See *Commonwealth* v. *Hollister,* 75 Mass. App. Ct. at 732-733. Contrast *Commonwealth* v. *Depina,* 456 Mass. at 249 ("lawfully admitted evidence" that firearm was a working firearm overwhelming); *Commonwealth* v. *Mendes,*

75 Mass. App. Ct. 390, 397 (2009) ("The strength of the independent evidence of the operability of the handgun shows beyond a reasonable doubt the harmlessness of the admission of the certificate. That independent evidence included testimony of three audible shots, the three empty casings, and the smell of gunpowder"); *Commonwealth* v. *Pittman, post* 905, 907 (2010) ("overwhelming evidence independent of the ballistics certificate that the gun in question was operable"). While the gun here was loaded, "a gun may be loaded and, at the same time, not capable of discharging a bullet due to a malfunction or misadjustment in the firing pin or some other part of the gun's mechanism." *Hollister, supra* at 733. "Thus, although the fact that the gun had ammunition in it bore on the question whether the gun was operable, it was not of such strength to conclude that the admission of the ballistics certificate did not contribute to the findings." *Ibid.* See *Commonwealth* v. *Muniz,* 456 Mass. at 172.

In concluding that the admission of the ballistics certificate with respect to the two firearm possession charges was not harmless beyond a reasonable doubt, we further note that the Commonwealth referred to the certificate several times at trial, including in the prosecutor's opening argument, during a witness's testimony, and in closing argument. See *Commonwealth* v. *Perez, supra* at 444 ("[T]he Commonwealth's reliance on the certificates was significant"). See also *Commonwealth* v. *Loadholt,* 456 Mass. 411, 433-434 (2010). The prosecutor also directly challenged defense counsel's argument that the preparer of the certificate was not present to testify and underscored for the jury that the law permitted the use of a certificate as prima facie evidence even in the absence of the person who prepared it.

The fact that the ballistics certificate was consistent with the Commonwealth's circumstantial evidence on the operability of the gun "does not mean those [certificates] were *cumulative* of otherwise properly admitted evidence." *Commonwealth* v. *Dagraca,* 447 Mass. 546, 554 (2006) (emphasis in original). See *Commonwealth* v. *Tyree,* 455 Mass. at 701. See also *Commonwealth* v. *Rosario,* 430 Mass. 505, 511 (1999) (when determining whether an error was harmless, we examine whether the erroneously admitted evidence was cumulative of other evidence). The only direct evidence that the gun found on the defendant was capable of firing a shot or bullet was the ballistics certificate.

Thus, although other evidence was before the jury, it was not so overwhelming that it rose to the level where we can say that the admission of the ballistics certificate did not contribute to the findings and was thus harmless beyond a reasonable doubt.

We turn now to the defendant's conviction of unlawful possession of ammunition and conclude, pursuant to *Muniz, supra* at 172-173, that the admission of the ballistics certificate with respect to this charge was harmless beyond a reasonable doubt. The charge of unlawful possession of ammunition requires the Commonwealth to prove that the bullets found on the defendant were "designed for use in any firearm." G. L. c. 140, § 121. *Muniz, supra* at 173. Here, as in *Muniz*, the Commonwealth introduced in evidence the gun, the magazines, and the testimony of an officer that the gun was loaded when discovered. See *id.* at 171. "The cartridges themselves and the officer's testimony that they were found in the magazine, which was in the gun at the time it was seized, provide overwhelming evidence that the cartridges met the statutory definition of ammunition." *Id.* at 173. See *Commonwealth* v. *Loadholt*, 456 Mass. at 434. Accordingly, we affirm the defendant's conviction of unlawful possession of ammunition.

*Conclusion.* We cannot conclude that the ballistics and drug certificates did not contribute to three of the verdicts returned against the defendant. With respect to these, the admission of the certificates was not harmless beyond a reasonable doubt, and the defendant's convictions of possession of a class A substance with intent to distribute, G. L. c. 94C, § 32(*a*); unlawful possession of a firearm, G. L. c. 269, § 10(*a*); and possession of a firearm with a defaced serial number, G. L. c. 269, § 11C, must be reversed and the verdicts set aside. The conviction of unlawful possession of ammunition, G. L. c. 269, § 10(*h*), however, is affirmed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*